IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | Civil No. 4:19-cv-00336 |
| Plaintiff, ) | |
| ) | |
| v. ) | VERIFIED COMPLAINT FOR |
| ) | FORFEITURE *IN REM* |
| $3,941.00 IN U.S. CURRENCY, ) | |
| $4,575.00 IN U.S. CURRENCY, ) | |
| MORE OR LESS, ) | |
| ) | |
| Defendants. ) | |

Plaintiff, United States of America hereby files and serves this
VERIFIED COMPLAINT IN REM and alleges as follows:

## I.    NATURE OF THE ACTION

1.    This is an action to forfeit and condemn specific property
("Defendant property") to the use and benefit of the United States of
America ("Plaintiff") for involvement, as set forth below, in violations of
21 U.S.C. § 846 (attempt and conspiracy) and § 841(a)(1) (prohibited
acts).

2.    The United States believes the Defendant property is subject
to forfeiture pursuant to 21 U.S.C. § 881(a)(6), as money or a thing of
value furnished or intended to be furnished by a person in exchange for
a controlled substance, in violation of subchapter I – Control and

Enforcement, of Chapter 13 – Drug Abuse Prevention and Control, and Title 21 – Food and Drugs, of the United States Code, and proceeds traceable to such an exchange, and money used or intended to be used to facilitate any violation of said subchapter.

## II.   DEFENDANT *IN REM*

3.   The Defendant property is generally described as approximately $3,941 in U.S. currency and approximately $4,575 in U.S. currency, seized in the Southern District of Iowa in July and August 2019, respectively, as discussed more fully below. The Defendant property is in the custody of the Des Moines Police Department, under the direction of the U.S. Attorney's Office for the Southern District of Iowa.

## III.   JURISDICTION AND VENUE

4.   This Court has jurisdiction over this case, pursuant to 28 U.S.C. Section 1345 (United States as plaintiff), as an action commenced by the United States of America, and pursuant to 28 U.S.C. Section 1355(a) (Fine, penalty, or forfeiture), as an action for forfeiture.

5.   This Court has *in rem* jurisdiction and venue over the Defendant property, pursuant to 28 U.S.C. Sections 1355(b) (Fine,

2

penalty, or forfeiture) and 1395(b) (Fine, penalty, or forfeiture), because acts or omissions giving rise to the forfeiture occurred in this district and because the Defendant property was seized from and is located in this district.

## IV. FACTS

6.     The "Controlled Substances Act" was enacted by Congress as Title II of the "Comprehensive Drug Abuse Prevention and Control Act of 1970," Pub.L. No. 91-513, 84 Stat. 1236 (1970) (codified at 21 U.S.C. §§ 801-904).

7.     The term "controlled substance" is defined in 21 U.S.C. § 802(6) to mean a drug or other substance, or immediate precursor, included in any of the five schedules of such substances set forth in subchapter I of Title 21.

8.     Schedule I substances have a high potential for abuse, have no currently accepted medical use in treatment in the United States, and there is a lack of accepted safety for use of these controlled substances under medical supervision. 21 U.S.C. § 812(b)(1)(A) - (C).

9.     Schedule II substances have a high potential for abuse, the controlled substances have a currently accepted medical use in treatment

3

in the United States or a currently accepted medical use with severe restrictions, but use of a  Schedule II controlled substance may lead to severe psychological or physical dependence 21 U.S.C. § 812(b)(2)(A) – (C).

10.    Schedule III substances have a potential for abuse less than the substances in Schedules I and II, have a currently accepted medical use for treatment in the United States, but abuse of the controlled substances may lead to a moderate or low physical dependence or high psychological dependence. 21 U.S.C. § 812(b)(3)(A) – (C).

11.    Schedule IV controlled substances have a low potential for abuse relative to the controlled substances in Scheduled I – III, have a currently accepted medical use in treatment in the United States, but abuse of the controlled substances may lead to limited physical dependence or psychological dependence relative to the controlled substances in Schedule III. 21 U.S.C. § 812(b)(4)(A) – (C).

12.    Schedule V controlled substances have a low potential for abuse relative to the substances in the preceding schedules, have a currently accepted medical use for treatment in the United States, but abuse of the controlled substances may lead to limited physical

4

dependence or psychological dependence relative to the controlled substances in Schedule IV. 21 U.S.C. § 812(b)(5)(A) – (C).

13.    Methamphetamine (Schedule II), Marijuana (Schedule I), Hydrocodone (Schedule II), and Psilocybin Mushrooms (Schedule I) are controlled substances under the Controlled Substances Act, and it is generally illegal for a person to possess and distribute them in the United States.

14.    Only persons registered by the Attorney General of the United States, in accordance with rules and regulations promulgated by the Attorney General, may legally manufacture or distribute Schedule II, III, IV, or V controlled substances. 21 U.S.C. § 822(a), (b).

15.    Under the Controlled Substances Act, it is unlawful to distribute, dispense, or possess with intent to distribute a controlled substance, unless authorized by law to do so.  21 U.S.C. § 841(a)(1).

16.    It is illegal, under federal law, to conspire with other people to sell and/or distribute controlled substances to others in exchange for money. 21 U.S.C. § 846.

17.    Under the Controlled Substances Act, it is unlawful to conspire with others to violate its prohibitions.  21 U.S.C. § 846.

18.   It is believed that evidence will show, or will show after a reasonable opportunity for further investigation and discovery, that the Defendant property constituted the proceeds of prohibited controlled substance offenses, or was used or intended to be used to facilitate a prohibited controlled substance offense.

19.   The profits from the illegal distribution of controlled substances are forfeitable under federal law.

20.   The Defendant property in this case was seized in July and August 2019, respectively, from Jon Berry Moore ("Moore"), in Des Moines, Iowa.

21.   Based on information known to the government, including Moore's admissions, Moore was at the time the Defendant property was seized an illegal dealer of one or more controlled substances, including methamphetamine.

22.   By February 2019, law enforcement in Des Moines, Iowa learned Moore was involved in the sale and distribution of methamphetamine in the Des Moines, Iowa area.

6

23. Moore was seen at or before that time in possession of at least a pound of methamphetamine in the garage of his residence on East Douglas Avenue in Des Moines.

24. In February 2019, law enforcement officers recovered evidence from the trash at this location connecting it to Moore's drug-dealing.

25. Among the items recovered from this location in February 2019 was the top zipper portion of a quart-sized, clear Ziploc baggie containing a small amount of crystalline substance, which tested positive for the presence of methamphetamine.

26. Distributors of illegal narcotics often utilize Ziploc baggies to package, transport and store illegal drugs.

27. Wholesale quantities of illegal narcotics are often concealed within Ziploc baggies, which are then often covered with additional layers of packaging, intended to keep the drugs inside safe, and perhaps to hinder or prevent their detection.

28. On July 12, 2019, a lawful federal search warrant was properly executed at the East Douglas Avenue, Des Moines, Iowa location where Moore was believed to reside.

7

29.   The warrant authorized law enforcement officers to search for, and seize, evidence of illegal drug-dealing, drug-trafficking, and other drug crimes.

30.   Inside the residence, law enforcement officers discovered the following evidence of illegal drug-dealing and/or other drug trafficking crimes:

     a)    Three grams of Psilocybin Mushrooms;
     b)    A baggie of Marijuana;
     c)    An estimated two grams of loose Methamphetamine;
     d)    A clear baggie of Hydrocodone pills; and
     e)    Miscellaneous drug paraphernalia.

31.   Moore was not present at the time the search warrant was executed, but his mother was present.

32.   The next day, on July 13, 2019, a law enforcement officer on routine traffic enforcement patrol in Des Moines in his fully-marked patrol car witnessed a motorcycle fail to stop at a stop sign, as the motorcycle was westbound on Atkins.

33.   The law enforcement officer initiated a traffic stop to address the violation.

34.   When the law enforcement officer activated his lights and siren, the motorcycle involved in the violation sped away, instead of stopping.

35.   The motorcycle led the law enforcement officer on a chase for several blocks, at times exceeding the posted speed limit by over 25 miles per hour.

36.   It is a crime in Iowa for a person to flee from a police officer trying to issue the person a traffic citation or otherwise make a traffic stop of that person while the person is driving a vehicle.

37.   It is a crime in Iowa for a person not to pull over for a nearby law enforcement vehicle running its lights and siren.

38.   The driver of the motorcycle eventually fell off the vehicle in the backyard of 1065 22nd Street, Des Moines, Iowa.

39.   The driver of the motorcycle was placed in handcuffs without further incident.

40.   The driver of the motorcycle was identified as Jon Barry Moore ("Moore"), age 53.

41.   When the law enforcement officers conducted a search incident to Moore's arrest, they found two syringes, a scale with

methamphetamine residue on it, a torch used for smoking and/or cooking methamphetamine, and $3,941 in cash.

42.    Moore admitted to being a user of methamphetamine.

43.    During a lawful probable cause search of the motorcycle, an officer discovered a Pringles potato chips canister containing a large amount of methamphetamine.

44.    Later, Moore was explained his constitutional/*Miranda* rights, and agreed to speak to law enforcement officers.

45.    Moore acknowledged the Pringles canister in his motorcycle contained methamphetamine, saying "I think so."

46.    Moore was indicted on August 13, 2019 on federal charges of possession with the intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and § 841(b)(1)(B), and the government provided notice it intended to criminally forfeit the $3,941 seized from Moore.

47.    On August 14, 2019, Moore was arrested on these federal charges by the Des Moines Police Department at his mother's house in Des Moines.

48.    As officers approached the garage of the house, they smelled the strong odor of marijuana.

49. As Moore exited the garage, he was arrested.

50. When Moore was legally searched incident to his lawful arrest, officers found marijuana on his person, as well as various amounts of U.S. Currency stuffed in his pants pockets and wallet.

51. In plain view inside the garage, officers saw a mirror/glass that had on it a substance that appeared to be methamphetamine.

52. Also in plain view inside the garage, officers located a green and silver digital scale.

53. A digital scale is a known tool of the drug distribution trade, as drug dealers use it to measure the quantity of drugs they are selling before distributing the product to purchasers.

54. One of the persons inside the garage with Moore, B.D. said she smoked methamphetamine with him.

55. When a law enforcement officer went to lawfully retrieve the items in plain view described above, they also discovered a methamphetamine pipe, which was also seized.

56. The total amount of currency seized from Moore on this date was $4,575.

57.    Employment checks confirm Moore has no employment and no reported income during the relevant time period.

58.    On September 17, 2019, Moore was charged on federal charges of possession with the intent to distribute methamphetamine, in violation of 21 U.S.C. §  841(a)(1) and § 841(b)(1)(B), in a Superseding Indictment which provided notice the government sought to also forfeit the $4,575 seized from Moore.

59.    On October 9, 2019, Moore pled guilty in federal court to the crime of possession with the intent to distribute methamphetamine.

60.    As part of his Plea Agreement, and at the change of plea hearing, Moore admitted the following:

  a) On July 13, 2019, he knowingly possessed approximately 280 grams of methamphetamine in a motorcycle he was driving in Des Moines, Iowa.  He also possessed a digital scale and $3,941 in cash on his person.

  b) Defendant intended to distribute some or all of that methamphetamine to another person or people.

61.    In addition to Moore's conviction in the pending federal criminal case, his criminal history for drug crimes includes the following:

  a) A 2007    conviction for Possession of a Controlled Substance (Misdemeanor - Polk County);

b) A 2013 conviction for a Controlled Substance Violation (Misdemeanor- Polk County); and

c) A 2014 conviction for a Controlled Substance Violation (Misdemeanor - Polk County).

62.   Evidence constituting indicia of drug-dealing or drug-trafficking includes, but is not limited to, a person's guilty plea in court to federal drug-dealing charges, a criminal history of involvement with drug crimes, intelligence indicating a person is involved in such conduct, and a person's connection to distribution quantities of illegal controlled substances, firearms, digital scales, drug paraphernalia, and large amounts of cash and/or currency from unreported sources of income.

63.   Another sign of illegal drug-dealing or drug-trafficking is a person attempting – at high speed – to flee what would otherwise be a routine encounter with law enforcement, such as a simple traffic stop, when they have evidence of drug-dealing or drug-trafficking on them.

64.   Based on the evidence known to the government, Moore does not appear to have a legitimate source of income to account for the Defendant property seized from him.

## V.  COUNT ONE
### (FORFEITURE UNDER 21 U.S.C. § 881(a)(6))

65.   Plaintiff repeats and realleges each and every allegation set forth above.

66.   The United States has reason to believe the Defendant property constitutes moneys or other things of value furnished or intended to be furnished in exchange for a controlled substance, and/or were used or intended to be used to facilitate one or more violations of 21 U.S.C. § 841 and § 846 et seq.

67.   As a result of the foregoing, the Defendant property is liable to condemnation and to forfeiture to the United States for its use, in accordance with 21 U.S.C. § 881(a)(6).

## VI.  CONCLUSION

WHEREFORE, the plaintiff requests that the Court issue a warrant for the arrest and seizure of the Defendant property, that the Defendant property be forfeited to the United States, and that it be awarded its costs and disbursements in this action, and such other and further relief as the Court deems proper and just under the facts and applicable law.

Respectfully submitted,

Marc Krickbaum
United States Attorney

By: */s/ Craig Peyton Gaumer*

Craig Peyton Gaumer
Assistant United States Attorney
U. S. Courthouse Annex, #286
110 East Court Avenue
Des Moines, Iowa 50309
Tel: (515) 473-9317
Fax: (515) 473-9292
Email: craig.gaumer@usdoj.gov

## VERIFICATION

I, Benjamin A. Carter, hereby verify and declare under penalty of perjury that I am a Police Officer and Narcotics Investigator with the Des Moines, Iowa Police Department and that I have read the foregoing Verified Complaint *in Rem*, and know the contents thereof and the matters contained in the Verified Complaint are true to my own knowledge, except for those matters not within my own personal knowledge and as to those matters, I believe them to be true.

The sources of my knowledge and information and the grounds for my belief are the official files and records of the United States and information provided to me by other law enforcement officers, as well as my investigation of this case, together with others, as a Police Officer and Narcotics Investigator with the Des Moines, Iowa Police Department.

Dated: October 22, 2019.

_____
Benjamin A. Carter, Narcotics Investigator
Des Moines Police Department

16